[Cite as *Leasure v. Adena Local School Dist.*, 2012-Ohio-3071.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

HEIDI LEASURE, et al.,                  :

    Plaintiffs-Appellees,               :    Case No.  11CA3249

    vs.                                 :

ADENA LOCAL SCHOOL DISTRICT,
 et al.,                                 :    DECISION AND JUDGMENT ENTRY

    Defendants-Appellants.              :

_____

APPEARANCES:

COUNSEL FOR APPELLANTS:     Richard W. Ross and Mark A. Weiker, Means, Bichimer,
                            Burkholder & Baker Co., L.P.A., 1650 Lake Shore Drive,
                            Suite 285, Columbus, Ohio 43204-4894

COUNSEL FOR APPELLEES:      James S. Savage, McFadden, Winner, Savage & Segerman,
                            L.L.P., 175 South Third Street, Suite 350, Columbus, Ohio
                            43215-5188

CIVIL CASE FROM COMMON PLEAS COURT
DATE JOURNALIZED: 6-28-12
ABELE, P.J.

    This is an appeal from a Ross County Common Pleas Court denial of summary judgment to

Adena Local School District Board of Education, defendant below and appellant herein.   The trial

court determined that appellant was not immune from liability under R.C. Chapter 2744 for the

negligence claims of Heidi J. Leasure and Earl A. Leasure, III, plaintiffs below and appellees herein,

and that the open and obvious doctrine did not bar appellees' negligence claims.

    Appellant assigns the following errors for review:

        FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED WHEN IT DETERMINED THAT THE BOARD OF EDUCATION WAS NOT IMMUNE FROM LIABILITY UNDER R.C. 2744.02."

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED BY DECLINING TO APPLY THE OPEN AND OBVIOUS DOCTRINE."

On September 17, 2007, Heidi sustained an injury when she fell on the school gymnasium bleachers. Before her fall, Heidi ascended the bleachers without incident. However, as she descended the bleachers with her young child in her arms, she fell near the bottom step.

Appellees filed a complaint against appellant and alleged that appellant negligently configured, installed, or maintained the bleachers and negligently failed to warn of the dangerous condition. Appellees sought damages for Heidi's injuries and Earl's loss of consortium. Appellees further asserted products liability claims against several John Does.

Appellant subsequently requested summary judgment and argued that it is immune from liability under R.C. Chapter 2744. Appellant contended that (1) none of the R.C. 2744.02(B) exceptions removed its immunity, (2) the only potentially applicable exception, R.C. 2744.02(B)(4), did not remove its immunity because the bleachers did not have a physical defect, and (3) even if R.C. 2744.02(B)(4) removed its immunity, R.C. 2744.03(A)(5) re-instates its immunity. Appellant further asserted that the open and obvious doctrine barred appellees' negligence claim.

To support its motion, appellant submitted the school's maintenance technician's affidavit. He stated that on the date of Heidi's injury, "the bleachers were in excellent condition, both mechanically and physically, with no defects or broken parts." He further stated that no one had reported "any malfunction, breakdown or defect in the bleachers or their operation."

In their memorandum in opposition to appellant's summary judgment motion, appellees asserted that (1) the failure to properly extend the bleachers resulted in a physical defect, and (2) the R.C. 2744.03(A)(5) discretionary defense did not apply to appellant's set up of the bleachers. Appellees also disputed appellant's argument that the open and obvious doctrine barred their negligence claims.

In her deposition, Heidi testified that she had been to the school gym more than a dozen times before her accident to watch her nieces' volleyball games and that on the date of her injury, the bleachers did not look any different than they had in the past. Heidi testified that before she fell, she was not aware that the bleachers had not been fully extended. She explained that she fell while walking down the bleachers with her child in her arms. Heidi stated that she believes her foot became stuck on the steps. After she fell, Heidi observed that the bleachers had not been fully extended (and thus locked into the intended position). When questioned where her foot became caught, she stated that she did not know, but it was "[s]omewhere in the step." She claimed that the step was not misaligned, but was "short."

The trial court denied appellant's summary judgment motion and determined that genuine issues of material fact remained regarding whether appellant is entitled to R.C. 2744.02(B)(4) immunity. The court concluded that genuine issues of material fact exist as to whether (1) the condition of the bleachers constituted a physical defect, and (2) the open and obvious doctrine barred appellees' negligence claim. This appeal followed.

I

In its first assignment of error, appellant asserts that the trial court erred by determining that it is not entitled to immunity under R.C. Chapter 2744. In particular, appellant asserts that the trial court improperly determined that genuine issues of material fact remain as to whether the

condition of the bleachers constitutes a physical defect under the R.C. 2744.02(B)(4) exception.


A

STANDARD OF REVIEW

Appellate courts conduct a de novo review of trial court summary judgment decisions. E.g., Grafton v. Ohio Edison Co., 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996).   Accordingly, an appellate court must independently review the record to determine if summary judgment is appropriate and need not defer to the trial court's decision.   E.g., Brown v. Scioto Bd. of Commrs., 87 Ohio App.3d 704, 711, 622 N.E.2d 1153 (1993); Morehead v. Conley, 75 Ohio App.3d 409, 411–12, 599 N.E.2d 786 (1991).   To determine whether a trial court properly granted a summary judgment motion, an appellate court must review the Civ.R. 56 summary judgment standard, as well as the applicable law.   Civ. R. 56(C) provides in relevant part:

> * * * Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.   No evidence or stipulation may be considered except as stated in this rule.   A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed most strongly in the party's favor.


Thus, pursuant to Civ.R. 56, a trial court may not grant summary judgment unless the evidence demonstrates that: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to

but one conclusion, and after viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made.   E.g., Vahila v. Hall, 77 Ohio St.3d 421, 429–30, 674 N.E.2d 1164 (1997).

B

R.C. CHAPTER 2744

R.C. Chapter 2744 establishes a three-step analysis for determining whether a political subdivision is immune from liability.   Cramer v. Auglaize Acres, 113 Ohio St.3d 266, 270, 2007-Ohio-1946, 865 N.E.2d 9, ¶14.   First, R.C. 2744.02(A)(1) sets forth the general rule that a political subdivision is immune from tort liability for acts or omissions connected with governmental or proprietary functions.   Cramer; Colbert v. Cleveland, 99 Ohio St.3d 215, 2003-Ohio-3319, 790 N.E.2d 781, ¶7; Harp v. Cleveland Hts., 87 Ohio St.3d 506, 509, 721 N.E.2d 1020 (2000).   Second, R.C. 2744.02(B) lists five exceptions to the general immunity granted to political subdivisions under R.C. 2744.02(A)(1).   Cramer; Ryll v. Columbus Fireworks Display Co., 95 Ohio St.3d 467, 470, 2002-Ohio-2584, 769 N.E.2d 372,¶25.   Finally, R.C. 2744.03(A) sets forth several defenses that a political subdivision may assert if R.C. 2744.02(B) imposes liability.   Cramer; Colbert at ¶9.   The R.C. 2744.03(A) defenses then re-instate immunity. Whether a political subdivision is entitled to statutory immunity under Chapter 2744 presents a question of law.   E.g., Conley v. Shearer, 64 Ohio St.3d 284, 292, 595 N.E.2d 862 (1992); Williams v. Glouster, 4th Dist. No. 10CA58, 2012-Ohio-1283, ¶15.

In the case sub judice, the parties do not dispute that appellant is entitled to the general grant of immunity under R.C. 2744.02(A)(1).   Instead, the primary dispute concerns the R.C. 2744.02(B)(4) exception.

R.C. 2744.02(B)(4) states:

(B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:
* * * *

(4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention, workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

Thus, to establish that the R.C. 2744.02(B)(4) exception applies, a plaintiff must demonstrate that the injury (1) resulted from a political subdivision employee's negligence, (2) occurred within or on the grounds of buildings used in connection with a governmental function, and (3) resulted from a physical defect within or on those grounds. Moss v. Lorain Cty. Bd. Of Mental Retardation, 185 Ohio App.3d 395, 2009-Ohio-6931, 924 N.E.2d 401, ¶13.

In the sub judice, appellant does not dispute that one of its employees was negligent and that the injury occurred within a building used in connection with a governmental function. Appellant "has assumed for the purposes of this appeal that some employee was negligent and that the injury occurred on school grounds." Appellant does, however, dispute whether Heidi's injury resulted from a physical defect. Therefore, to resolve this dispute we must interpret the meaning of "physical defect" as used in R.C. 2744.02(B)(4).

1

Statutory Construction

To determine the meaning of "physical defect," we must examine the principles of statutory construction. In construing a statute, a court's paramount concern is the legislature's intent in

enacting it.   E.g., Havel v. Villa St. Joseph, 131 Ohio St.3d 235, 2012-Ohio-552, 963 N.E.2d

1270, ¶28; State ex rel. Cincinnati Enquirer v. Jones-Kelley, 118 Ohio St.3d 81, 2008-Ohio-1770,

886 N.E.2d 206, ¶17, citing State ex rel. Russell v. Thornton, 111 Ohio St.3d 409,

2006-Ohio-5858, 856 N.E.2d 966, ¶11.   To determine legislative intent, a court must first look to

the words used in the statute.   State ex rel. Loyd v. Lovelady, 108 Ohio St.3d 86, 2006-Ohio-161,

840 N.E.2d 1062, ¶13.   A court must "read words and phrases in context and construe them in

accordance with rules of grammar and common usage."   State ex rel. Russell v. Thornton, 111

Ohio St.3d 409, 2006-Ohio-5858, 856 N.E.2d 966, ¶11.   "In construing the terms of a particular

statute, words must be given their usual, normal, and/or customary meanings."   Proctor v.

Kardassilaris, 115 Ohio St.3d 71, 2007-Ohio-4838, 873 N.E.2d 872, ¶12.

When a statute's language is plain and unambiguous and conveys a clear and definite

meaning, no need exists to apply rules of statutory construction.   E.g., id., citing State v.

Porterfield, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690, ¶11.   However, when a statute is

subject to various interpretations, courts may invoke rules of statutory construction to arrive at

legislative intent.   R.C. 1.49; Summerville v. Forest Park, 128 Ohio St.3d 221, 2010-Ohio-6280,

943 N.E.2d 522, ¶18, citing Cline v. Ohio Bur. of Motor Vehicles, 61 Pjop St/3d 93. 96. 573

N.E.2d 77 (1991).

2

PHYSICAL DEFECT

R.C. Chapter 2744 does not define "physical defect."   We thus first examine the plain and

ordinary meaning of "physical defect."   One court has defined "physical" as "'having a material

existence: perceptible esp[ecially] through senses and subject to the laws of nature.'"   Hamrick v.

Bryan City Sch. Dist., 6th Dist. No. WM-10-014, 2011-Ohio-2572, ¶28, quoting Merriam

Webster's New Collegiate Dictionary (10 Ed.1996) at 877.   The Hamrick court defined "defect"

as "'an imperfection that impairs worth or utility.'" Id., quoting Merriam Webster's New

Collegiate Dictionary (10 Ed.1996) at 302.   "It would seem then that a 'physical defect' is a

perceivable imperfection that diminishes the worth or utility of the object at issue."   Id.

To determine whether the improperly set up bleachers contained a perceivable imperfection

that diminished their worth or utility, we examine prior cases that have considered whether the

R.C. 2744.02(B)(4) physical defect exception applied.   In general, courts have held that the R.C.

2744.02(B)(4) physical defect exception may apply if the instrumentality that caused the plaintiff's

injury did not operate as intended due to a perceivable condition–or, to put it in the words of the

Hamrick court, if the instrumentality contained a perceivable imperfection that impaired its worth

or utility.   See DeMartino v. Poland Loc. Sch. Dist., Mahoning App. No. 10MA19,

2011-Ohio-1466 (rejecting school district's argument that operation of lawn mower without

discharge chute could not constitute a physical defect); Yeater v. Board of Ed., LaBrae Sch. Dist.,

Trumbull App. No. 2009-T-0107, 2010-Ohio-3684 (determining that genuine issues of material

fact remained regarding physical defect exception to statutory immunity when evidence existed

that volleyball equipment contained loose bolts).   In contrast, when the instrumentality that caused

the plaintiff's injury operated as intended–or when it did not contain any perceivable imperfection

that impaired or diminished its utility–the courts have concluded that the instrumentality did not

constitute a physical defect.   Hamrick, supra.

In DeMartino, for example, the court determined that operating a lawnmower without the

required discharge chute could constitute a physical defect.   In DeMartino, a student band member

suffered a head injury when a metal object ejected from a lawnmower that a school employee had

been operating without the required discharge chute.   After the trial court overruled the

defendants' motion for judgment on the pleadings based upon statutory immunity, the defendants appealed and asserted that the trial court improperly determined that they were not entitled to statutory immunity.   They asserted that the R.C. 2744.02(B)(4) physical defect exception did not apply to the employee's operation of the lawnmower.   The appellate court disagreed and determined that the plaintiff's allegation that the employee operated the lawnmower without the required discharge chute sufficiently established that the R.C. 2744.02(B)(4) exception may apply. In essence, the court concluded that a physical defect exists when the instrumentality that caused the plaintiff's injury did not operate as intended due to a perceivable condition.   For instance, the lawnmower did not operate as intended (i.e., safely) due to a perceivable condition (i.e., the lack of the discharge chute) because the employee failed to use the discharge chute.   In the words of the Hamrick court, the lawnmower contained a perceivable imperfection that diminished its utility or worth (i.e., the lack of the discharge chute diminished its ability to function in a safe manner).

In Yeater, the court determined that loose bolts within volleyball equipment may constitute a perceivable imperfection that diminishes the equipment's utility or worth.   In Yeater, the plaintiff suffered an injury when a stanchion, a piece of equipment used to hold volleyball nets, fell on her foot in the school gymnasium.   The school district alleged that it was statutorily immune from liability and no genuine issues of material fact remained as to whether the plaintiff's injury resulted from a physical defect.   The appellate court determined, however, that genuine issues of material fact remained as to whether the plaintiff's injury resulted from a physical defect because evidence existed that the stanchion contained loose bolts.   Id. at 28.   The Yeater court thus also appears to have determined that the equipment constituted a physical defect because it did not operate as intended (i.e., the equipment fell) due to a perceivable condition (i.e., the loose bolts).

Conversely, courts have determined that when the instrumentality that caused the plaintiff's

injury operated as intended, the R.C. 2744.02(B)(4) physical defect exception does not apply.   In Hamrick, the trial court determined that the school district was statutorily immune for injuries the plaintiff suffered when he fell into a service pit located in a school bus garage.   On appeal, the plaintiff argued that the trial court improperly determined that the R.C. 2744.02(B)(4) physical defect exception did not apply.   The plaintiff argued that the pit constituted a physical defect because it was uncovered and because the lip surrounding it was not painted a different color.   Id. at ¶23.   The school district asserted that "there was no 'physical defect' in the maintenance pit in the bus garage."   Id. at ¶18.   The district alleged that the purpose of the pit "is to permit mechanics to get beneath school buses to perform maintenance."   Id.   The school district contended that because "the pit operated as it was intended," the pit was not defective.   Id.   The court found that the plaintiff failed to present any evidence of a "discernable imperfection that diminished the utility of either the bus garage or the service pit."   Id. at ¶29.   The court further observed that the plaintiff did not present any evidence "to suggest that either did not perform as intended or was less useful than designed."   Id.   The court thus determined that the physical defect exception did not apply.

      In the case sub judice, we believe that the improperly set up bleachers bear more similarity to the improperly used lawnmower in DeMartino and to the loose bolts in Yeater.   In both cases, as in the case at bar, the instrumentalities that caused the injuries did not operate as intended due to a perceivable condition.   In Yeater, the loose bolts caused the equipment to fail to operate as intended.   In DeMartino, the employee's failure to use the lawnmower discharge chute caused the lawnmower to fail to operate as intended.   In the case sub judice, the failure to properly set up the bleachers caused them to become unstable and, thus, to fail to operate as intended.   In other words, the improperly set up bleachers contained a perceivable imperfection that impaired their utility.

The bleachers were obviously meant to be used in a safe and stable manner.   The improper set up resulted in the bleachers having the ability to move while in use.   Appellees did present some evidence that the improperly set up bleachers resulted in the bottom step being shorter than the other steps.   If appellees' evidence is believed, the short step constitutes a perceivable imperfection and it also impaired the bleachers' utility by failing to operate in a safe and stable manner.

Unlike the situation in <u>Hamrick</u> in which the evidence showed that the service pit and garage performed as intended, in the case at bar the evidence does not show that the bleachers performed as intended.   Here, the bleachers were intended to be set up properly so that they would not shift position or move while in use.   They were not.   Conversely, in <u>Hamrick</u> the evidence did not show that the service pit failed in any manner to operate in the way it was intended.

Appellant argues that the bleachers could not have constituted a physical defect when they had been certified to be in proper working order.   We believe, however, that appellant's argument attempts to equate the word defect as used in R.C. 2744.02(B)(4) with defective product, as defined in products liability law.   R.C. Chapter 2744 contains nothing to indicate that the legislature intended to incorporate products liability law into R.C. 2744.02(B)(4).[1]

---

[1]   For instance, R.C. 2307.74 states:

> A product is defective in manufacture or construction if, when it left the control of its manufacturer, it deviated in a material way from the design specifications, formula, or performance standards of the manufacturer, or from otherwise identical units manufactured to the same design specifications, formula, or performance standards.    A product may be defective in manufacture or construction as described in this section even though its manufacturer exercised all possible care in its manufacture or construction.

The plain meaning of "physical defect," as we—and the <u>Hamrick</u> court--have defined it does not mean the same as a defective product under R.C. 2307.74.    As we explained, a physical defect may exist if the instrumentality that caused the injury did not

Moreover, neither <u>DeMartino</u> nor <u>Yeater</u> requires that the instrumentality that caused the injury contain an inherent defect.   In <u>Yeater</u>, there apparently was nothing inherently wrong with the equipment.   Rather, the defect resulted from loose bolts.   There was no allegation that the bolts were inherently defective.   Likewise, in <u>DeMartino</u> there was no evidence that the lawnmower had an inherent defect.   Rather, the defect existed because the employee did not operate the lawnmower as directed.

Similarly, in the case at bar, we have, at this juncture, no evidence that the bleachers contain an inherent defect.   The defect apparently arose because the employee(s) responsible for setting up the bleachers did not do so properly.   The failure to set up the bleachers according to the manufacturer's specifications gave rise to the physical defect.   The employee(s)' failure to ensure that the bleachers were properly extended and in a locked position rendered the bleachers unstable.  In an unstable condition, the bleachers would be subject to moving, which could result in a shortening of the stair treads.   Appellees presented evidence that this is precisely what happened. In their appellate brief, they state:

> Mrs. Leasure recalls sensing that "the step was short."   Because the bleachers had not been fully extended and locked into place, the second step up from the gym floor was significantly narrower than the steps above it.   As she descended the steps, Mrs. Leasure's feet had become accustomed to steps with a depth of twelve inches.   Because the last section of the bleachers was not extended, the second step from the bottom was about half the depth of the ones above it.

Consequently, if the appellees' evidence is believed, then the improperly set up bleachers constitute a physical defect and the R.C. 2744.02(B)(4) exception removes appellant's R.C. 2744.02(A)(1) immunity.

---

function as intended.    An instrumentality might comply with a manufacturer's design specifications, formula, or performance standards, yet the instrumentality may develop a physical defect due to a third party's actions.

Our comments should not be misconstrued as a comment on the merits of appellees' product liability claims.

Therefore, the trial court did not erroneously determine that genuine issues of material fact remain regarding whether the bleachers constituted a physical defect.

3

DISCRETIONARY DEFENSE

Appellant next argues that the trial court improperly determined that R.C. 2744.03(A)(5) does not re-instate its immunity.   We do not agree.

R.C. 2744.03(A)(5) provides:

> The political subdivision is immune from liability if the injury, death or loss to persons or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

The R.C. 2744.03(A)(5) discretionary defense extends only to activities that involve weighing alternatives or making decisions that involve a "high degree of official judgment or discretion." Enghauser Mfg. Co. V. Eriksson Engineering Ltd., 6 Ohio St.3d 31, 451 N.E.2d 228 (1983), paragraph two of the syllabus.   Thus, political subdivisions are immune from liability for "'certain acts which go to the essence of governing,' i.e., conduct characterized by a high degree of discretion and judgment in making public policy choices."   Butler v. Jordan, 92 Ohio St.3d 354, 375, 750 N.E.2d 554 (2001) (Cook, J., concurring), quoting Enghauser Mfg. Co., 6 Ohio St.3d at 35.   In other words, "immunity attaches only to the broad type of discretion involving public policy made with 'the creative exercise of political judgment.'"   McVey v. Cincinnati, 109 Ohio App.3d 159, 163, 671 N.E.2d 1288 (1995), quoting Bolding v. Dublin Loc. Sch. Dist., 10th Dist. No. 94APE09-1307 (June 15, 1995).   The "exercise of judgment and discretion" contemplated by R.C. 2744.03(A)(5) thus does not apply to every decision that a political subdivision makes. Mathews v. Waverly, 4th Dist. No. 08CA787, 2010-Ohio-347, ¶45.   As we explained in Hall v.

Fort Frye Loc. Sch. Dist. Bd. Of Educ., 111 Ohio App.3d 690, 699, 676 N.E.2d 1241 (1996):

> Immunity operates to protect political subdivisions from liability based upon discretionary judgments concerning the allocation of scarce resources; it is not intended to protect conduct which requires very little discretion or independent judgment. The law of immunity is designed to foster freedom and discretion in the development of public policy while still ensuring that implementation of political subdivision responsibilities is conducted in a reasonable manner.

Additionally, we observe that courts must construe the R.C. 2744.03(A)(5) discretionary defense narrowly. Greene Cty. Agricultural Soc. v. Liming, 89 Ohio St.3d 551, 561, 733 N.E.2d 1141 (2000), citing Hall, supra, and Hallett v. Stow Bd. Of Edn., 89 Ohio App.3d 309, 624 N.E.2d 272 (1993). Accord DeMartino; Malone v. Chillicothe, 4th Dist. No. 05CA2869, 2006-Ohio-3268. As the Greene court explained: "The nonliability provisions of [R.C. 2744.03] must be read more narrowly than the liability provisions of R.C. 2744.02 (B), or the structure of R.C. Chapter 2744 makes no sense at all." Id. at 561.

We have determined that R.C. 2744.03(A)(5) does not insulate a political subdivision from liability for damages stemming from the negligent maintenance of its buildings or grounds. Frederick v. Vinton Cty. Bd. Of Educ., 4th Dist. No. 03-579, 2004-Ohio-550; Hall, 111 Ohio App.3d at 699-700. In Hall, we held that the maintenance of a school's irrigation system does not involve the exercise of judgment or discretion. In that case, the plaintiff, a football player, suffered an injury during football practice when he stepped on an exposed sprinkler head located on the high school's practice field. The trial court granted summary judgment to the school on the basis of statutory immunity. We reversed that judgment and held that the maintenance of the high school practice field does not require the exercise of judgment or discretion as contemplated in R.C. 2744.03(A)(5). We held that the school's "initial decision * * * to purchase and install the irrigation system clearly involved the exercise of protected judgment or discretion, for which [the

school] is entitled to immunity * * *."   Id. at 700.   We further held, however, that

> the maintenance of the school's irrigation system * * * is a totally separate matter
> that does not involve the exercise of such judgment or discretion.   The decision to
> allocate resources, i.e., 'how to use, equipment * * * facilities,' has been made and
> is immunized.   However, once that policy is put into effect, [the school's]
> maintenance procedures must be performed in a reasonably safe manner.

Id.   We held "as a matter of law that the maintenance of a political subdivision's property, as opposed to decisions concerning the acquisition and utilization of such property, do not involve a sufficient amount of budgeting, management, or planning to bring such decisions into the purview of R.C. 2744.03(A)(3) or (5)."   Id. at 702.   Accord Perkins v. Norwood City Schools (1999), 85 Ohio St.3d 191, 193, 707 N.E.2d 868 (stating that a school principal's decision regarding whom to employ to repair a leaking drinking fountain does not constitute an exercise of judgment or discretion in determining how to use personnel and resources within the meaning of R.C. 2744.03(A)(5), but instead is a routine maintenance decision requiring little judgment or discretion); Malone v. Chillicothe, Ross App. No. 05CA2869, 2006-Ohio-3268 (concluding that R.C. 2744.03(A)(5) does not insulate a political subdivision from liability for damages stemming from the negligent maintenance of its buildings or grounds).   See, also, McVey, 109 Ohio App.3d at 163, quoting Bolding v. Dublin Loc. Sch. Dist., 10th Dist. No. 94APE09-1307 (June 15, 1995) ("Immunity does not apply to the negligence of employees in 'the details of carrying out the activity even though there is discretion in making choices.'"); Hallett, 89 Ohio App.3d at 313 (determining that discretionary defense did not apply when "[t]here was evidence before the trial court from which it could be concluded that [the plaintiff] was injured because an employee or employees of defendants' maintenance department did not properly carry out the duties that had been assigned to them").

In the case at bar, we do not believe that Heidi's injury resulted from "the exercise of

judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources." Rather, the evidence suggests that one of appellant's employees failed to properly carry out his or her duties. Whether to set up and use the bleachers according to the manufacturer's specifications involved a routine matter of safe and proper operation of school equipment. Appellant already exercised its judgment or discretion to install the bleachers. Operating them in a safe manner and in accordance with the manufacturer's specifications does not involve the creative exercise of political judgment.

Appellant nevertheless contends that the R.C. 2744.03(A)(5) defense applied simply because Leasure's accident occurred on school bleachers. To support this argument, appellant cites Myer v. Reynoldsburg High School, 10th Dist. No. 90AP-503 (Feb. 28, 1991), and Balazs v. Kirtland Bd. Of Educ., 8th Dist. No. 67263 (Mar. 30, 1995). Both cases are distinguishable and neither states that a school district is always entitled to immunity when an injury occurs on school bleachers.

In Myer, a seven-year old child fell while playing on football stadium bleachers. The child fell between the seats and the standing board. The plaintiffs subsequently filed a complaint against the school that alleged negligent construction of the bleachers and negligent failure to warn of the danger of failing through the bleachers. The appellate court concluded that R.C. 2744.02(B)(2) presented the only possible exception to immunity, which stated: "(2) Political subdivisions are liable for injury, * * * caused by the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions." The court determined that the plaintiffs could not demonstrate that this exception to immunity applied when there was no evidence that the child's injury resulted from a political subdivision employee's negligence.

The court further observed that the R.C. 2744.03(A)(5) discretionary defense would shield the school from liability.   The court explained that the school

cannot be found liable based on the exercise of judgment or discretion in

determining whether to acquire and how to use equipment, supplies and facilities;

the judgment to build a football stadium which can be used by the school; the

discretion as to how much money to spend on bleachers; and the discretion to allow

the football league to use the stadium.

Balazs involved nearly identical facts.   In Balazs, a five-year old child fell through the bleachers.   The court relied upon the Myer court's decision to conclude that the school district could not be liable for the child's injuries.

Myer and Balazs are inapposite to the case at bar.   Unlike the plaintiffs in those two cases, in the case sub judice appellees have not alleged that appellant negligently designed or constructed the bleachers.   Instead, appellees' negligence complaint is grounded upon appellant's failure to properly set up the bleachers once the decision had been made to design, install and construct them.   The school's decision regarding proper set up of the bleachers does not involve a high degree of discretionary judgment.   Instead, it is a routine matter.   Consequently, we do not agree with appellant that R.C. 2744.03(A)(5) re-instates its immunity.

Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.

## II

In its second assignment of error, appellant asserts that the trial court erroneously determined that the open and obvious doctrine did not bar appellees' negligence claims.

Before we can review appellant's second assignment of error, however, we must determine whether we have jurisdiction to do so. Appellate courts have jurisdiction to review the final orders of inferior courts within their districts. Section 3(B)(2), Article IV, Ohio Constitution; R.C. 2501.02. If an order is not final and appealable, then an appellate court has no jurisdiction to review the matter. E.g., General Acc. Ins. Co. v. Ins. Co. of N. America, 44 Ohio St.3d 17, 20, 540 N.E.2d 266 (1989). In the event that the parties involved in the appeal do not raise this jurisdictional issue, an appellate court must raise it sua sponte. E.g., Kouns v. Pemberton, 84 Ohio App.3d 499, 501, 617 N.E.2d 701 (1992), citing In re Murray, 52 Ohio St.3d 155, 159, 556 N.E.2d 1169 fn.2 (1990) (stating that court had "admonished" appellate courts to sua sponte dismiss appeals that are not from final, appealable orders), and Whitaker-Merrell Co. v. Geupel Const. Co., 29 Ohio St.3d 184, 280 N.E.2d 922 (1972) (stating that appellate court should have sua sponte dismissed appeal due to lack of final, appealable order). See, also, State ex rel. Scruggs v. Sadler, 97 Ohio St.3d 78, 2002-Ohio-5315, 776 N.E.2d 101, ¶4 (stating that "jurisdictional issue cannot be waived and may be raised by [supreme] court sua sponte"); State ex rel. White v. Cuyahoga Metro. Hous. Auth., 79 Ohio St.3d 543, 544, 684 N.E.2d 72 (1997) (stating that appellate court "may" sua sponte consider its own jurisdiction).[2]

"Generally, the denial of summary judgment is not a final, appealable order." Hubbell v. City of Xenia, 115 Ohio St.3d 77, 2007–Ohio–4839, 873 N.E.2d 878, ¶9. A trial court's order to deny a summary judgment motion on the basis of statutory immunity, however, does constitute a

---

[2] It is unclear whether Scruggs and White, by using permissive language, intended to change an appellate court's authority to sua sponte raise this jurisdictional issue. Neither case explicitly overruled Murray or Whitaker-Merrell. Both, however, use discretionary language when speaking of an appellate court's authority to sua sponte raise this jurisdictional issue. Because neither Murray nor Whittaker-Merrell has been overruled, we adhere to our previous language stating that we must raise the jurisdictional issue sua sponte.

final order.   R.C. 2744.02(C); Sullivan v. Anderson Twp., 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, syllabus; Hubbell at syllabus; Essman v. Portsmouth, Scioto App. No. 08CA3244, 2009–Ohio–3367, ¶10, motion to certify allowed, 127 Ohio St.3d 1544, 2011–Ohio–647, 941 N.E.2d 802, and discretionary appeal accepted, 127 Ohio St.3d 1545, 2011–Ohio–647, 941 N.E.2d 803, and appeal dismissed, 129 Ohio St.3d 1471, 2011-Ohio-4768, 953 N.E.2d 839; CAC Bldg. Properties v. Cleveland, 8th Dist. No. 91991, 2009-Ohio-1786, at fn.1.   R.C. 2744.02(C) explicitly states that an order denying "a political subdivision or an employee of a political subdivision the benefit of an alleged immunity from liability as provided in this chapter or any other provision of the law is a final order."   However, appellate review under R.C. 2744.02(C) is limited to the denial of immunity.   Nagel v. Horner, 162 Ohio App.3d 221, 2005–Ohio–3574, 833 N.E.2d 300, ¶21 (stating that R.C. 2744.02(C) limits appellate review to denial of immunity and does not authorize court to review merits of the action).   Accord Makowski v. Kohler, 9th Dist. No. 25219, 2011–Ohio–2382, ¶7 (stating that an R.C. 2744.02(C) appeal "is limited to the review of alleged errors in the portion of the trial court's decision which denied the political subdivision the benefit of immunity").   Accord Long v. Hanging Rock, 4th Dist. No. 09CA30, 2011-Ohio-5137; Essman; CAC Bldg.; Deveaux v. Albrecht Trucking Co. Inc., 9th Dist. No. 09CA0069–M, 2010–Ohio–1249, ¶7; Carter v. Complete Gen. Constr. Co., 10th Dist. No. 08AP–309, 2008–Ohio–6308, ¶8.   Thus, when appealing a denial of immunity under R.C. 2744.02(C), a party may not raise other alleged errors concerning the denial of summary judgment.

        In the case at bar, one aspect of the trial court's decision denied appellant the benefit of an alleged immunity.   Another aspect of the court's decision rejected appellant's assertion that even if it is not entitled to immunity, the open and obvious doctrine precludes appellees' negligence claim.   The trial court denied appellant summary judgment on both the statutory immunity issue

and the open and obvious issue.   Because the court's decision concerning the open and obvious

doctrine did not deny appellant the benefit of an alleged immunity, we lack jurisdiction to review

it.   Consequently, at this juncture we cannot address appellant's second assignment of error.

    Accordingly, based upon the foregoing reasons, we hereby affirm the trial court's judgment.


                           JUDGMENT AFFIRMED.


Harsha, J., dissenting in part:

I dissent from the disposition of the first assignment of error because the question of whether the exception from immunity found in R.C. 2744.02(B) applies, presents a question of law, not fact.   The availability of the statutory immunity defense is purely a question of law to be decided by the court, not the jury, before trial.   *See Conley v. Shearer*, 64 Ohio St.3d 284, 292, 595 N.E.2d 862, (1992) and *MacCABEE v. Mollica*, 4th Dist. No. 09CA32, 2010-Ohio-4310 (Harsha, J., dissenting).   Thus, the trial court erred in deciding that issues of material fact precluded it from reaching a decision on the question of immunity.   Accordingly, I would remand the matter to the trial court with instructions to determine the availability of immunity under the proper legal analysis.In all other regards, I concur in judgment and opinion.

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellees recover of appellants costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Kline, J.: Concurs in Judgment & Opinion

Harsha, J.: Concurs in Judgment & Opinion as to Assignment of Error II and Dissents with Opinion as to Assignment of Error I

For the Court

BY:_____

Peter B. Abele, Presiding Judge

NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.