[Cite as *Seese v. Buckeye Career Ctr.*, 2020-Ohio-933.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| HUNTER SEESE, ET AL. | : | JUDGES: |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiffs-Appellees | : | Hon. W. Scott Gwin, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| BUCKEYE CAREER CENTER, ET AL. | : | Case No. 2019 AP 09 0038 |
| | : | |
| Defendants-Appellants | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common Pleas, Case No. 2018 CT 06 0522


JUDGMENT:        Affirmed


DATE OF JUDGMENT:        March 11, 2020


APPEARANCES:

For Plaintiffs-Appellees        For Defendants-Appellants

MARK C. WILLIS        DOUGLAS G. LEAK
MATTHEW L. RIZZI, JR.        KENNETH A. CALDERONE
HEATHER R. NINNI        CATHERINE E. NAGY
670 West Market Street        ANNE M. MARKOWSKI
Akron, OH  44303        3737 Embassy Parkway, Suite 100
       Akron, OH  44333

*Wise, Earle, J.*

{¶ 1}   Defendants-Appellants, Buckeye Career Center, Buckeye Career Center Board of Education, Buckeye Joint Vocational School District, Buckeye Joint Vocational School District Board of Education, and Ryan Irwin appeal the September 10, 2019 judgment entry of the Court of Common Pleas of Tuscarawas County, Ohio, denying their motions for summary judgment.   Plaintiffs-Appellees are Hunter Seese and Christine George.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On March 27, 2017, appellee Seese was attending an Energy Operations class at Buckeye Career Center.   At the time, he was sixteen years old.   The class was taught by appellant Irwin.   The lesson for that day was about load securement using chains and snap binders and additional pipes or bars ("cheater bars") to gain leverage on the handle of the snap binder.   The cheater bar in use during the lesson was a fence post driver.   When Seese was securing his load during the lab portion of the class, the fence post driver slipped off the snap binder handle and the handle flew backwards and struck Seese in the face, causing injuries.

{¶ 3}   On June 15, 2018, Seese, together with his mother, filed a complaint against appellants, claiming negligence, respondeat superior/vicarious liability, and loss of consortium.   The complaint alleged Irwin was negligent in the instruction, training, and supervision of Seese, the incident occurred on the grounds of the Buckeye Career Center, and the post driver and the snap binder handle were physical defects.

{¶ 4}   On April 25, 2019, Irwin filed a motion for summary judgment, claiming immunity under R.C. 2744.03(A)(6)(b).   On April 26, 2019, the remaining appellants filed

a motion for summary judgment, claiming immunity under R.C. Chapter 2744. By judgment entry filed September 10, 2019, the trial court denied the motions, finding genuine issues of material fact to exist.

{¶ 5}  Appellants filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 6}  "THE TRIAL COURT ERRED IN DENYING DEFENDANTS-APPELLANTS BUCKEYE CAREER CENTER, BUCKEYE CAREER CENTER BOARD OF EDUCATION, BUCKEYE JOINT VOCATIONAL SCHOOL DISTRICT AND BUCKEYE JOINT VOCATIONAL SCHOOL DISTRICT BOARD OF EDUCATION'S MOTION FOR SUMMARY JUDGMENT BECAUSE THEY WERE ENTITLED TO POLITICAL SUBDIVISION IMMUNITY UNDER R.C. 2744.02 AND R.C. 2744.03."

II

{¶ 7}  "THE TRIAL COURT ERRED IN DENYING DEFENDANT-APPELLANT RYAN IRWIN'S MOTION FOR SUMMARY JUDGMENT BECAUSE HE WAS ENTITLED TO IMMUNITY UNDER R.C. 2744.03 (A)(6)(b)."

I, II

{¶ 8}  In their two assignments of error, appellants claim the trial court erred in denying their motions for summary judgment as they are covered by immunity under R.C. Chapter 2744.  We disagree.

{¶ 9}  Summary Judgment motions are to be resolved in light of the dictates of Civ.R. 56.  Said rule was reaffirmed by the Supreme Court of Ohio in *State ex rel. Zimmerman v. Tompkins,* 75 Ohio St.3d 447, 448, 663 N.E.2d 639 (1996):

Civ.R. 56(C) provides that before summary judgment may be granted, it must be determined that (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. *State ex. rel. Parsons v. Fleming* (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377, 1379, citing *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O3d 466, 472, 364 N.E.2d 267, 274.

{¶ 10} As an appellate court reviewing summary judgment motions, we must stand in the shoes of the trial court and review summary judgments on the same standard and evidence as the trial court. *Smiddy v. The Wedding Party, Inc.,* 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).

{¶ 11} The denial of immunity to a political subdivision under R.C. Chapter 2744 is a final, appealable order pursuant to R.C. 2744.02(C). *Hubbell v. City of Xenia,* 115 Ohio St.3d 77, syllabus, 2007-Ohio-4839, 873 N.E.2d 878.

{¶ 12} Determining whether a political subdivision is immune from liability requires a three-part analysis. *Elston v. Howland Local Schools,* 113 Ohio St.3d 314, 865 N.E.2d 845, 2007-Ohio-2070. First, R.C. 2744.02(A) provides broad immunity to political subdivisions. It is undisputed the Buckeye appellants are political subdivisions and Irwin

is an employee thereof, and the operation of the classroom was a governmental or proprietary function. Second, it must be determined if an exception applies under subsection (B). If so, then third, it must be determined whether any of the defenses in R.C. 2744.03(A) apply to reinstate immunity. This three-part analysis does not apply to individual employees of a political subdivision. *Pearson v. Warrensville Heights City Schools,* 8th Dist. Cuyahoga No. 88527, 2008-Ohio-1102.

{¶ 13} R.C. 2744.02 governs political subdivisions not liable for injury, death, or loss and exceptions. Subsection (B) lists exceptions to immunity, and states the following relevant to this case:

> (B) Subject to sections 2744.03 and 2744.05 of the Revised Code, a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or of any of its employees in connection with a governmental or proprietary function, as follows:

> (4) Except as otherwise provided in section 3746.24 of the Revised Code, political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function, including, but not limited to, office buildings and courthouses, but not including jails, places of juvenile detention,

workhouses, or any other detention facility, as defined in section 2921.01 of the Revised Code.

{¶ 14} In *Jones v. Delaware City School District Board of Education,* 5th Dist. Delaware No. 2013 CAE 01 0009, 2013-Ohio-3907, ¶ 22-23, this court discussed the meaning of "physical defects" as follows:

The phrase "physical defect" is not defined in R.C. Chapter 2744. However, in general, courts have held the R.C. 2744.02(B)(4) physical defect exception may apply if the instrumentality that caused appellee's injury did not operate as intended due to a perceivable condition or if the instrumentality contained a perceivable imperfection that impaired its worth or utility. *Leasure v. Adena Local School District,* 2012-Ohio-3071, 973 N.E.2d 810. * * *

When an instrumentality does not operate as intended (i.e. safely) due to a perceivable condition, it loses its ability to function in a safe manner and may constitute a perceivable imperfection that diminishes the instrumentality's utility or worth. * * *

{¶ 15} R.C. 2477.03 governs defenses and immunities. Pertinent to this case are subsections (A)(3), (5), and (6)(b) which state the following:

(3) The political subdivision is immune from liability if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee.

(5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner

(6) In addition to any immunity or defense referred to in division (A)(7) of this section and in circumstances not covered by that division or sections 3314.07 and 3746.24 of the Revised Code, the employee is immune from liability unless one of the following applies:

(b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner[.]

{¶ 16} As explained by the Supreme Court of Ohio in *Anderson v. City of Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 705, at ¶ 33-34:

Wanton misconduct is the failure to exercise any care toward those to whom a duty of care is owed in circumstances in which there is great probability that harm will result. * * *

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. * * * *see also Black's Law Dictionary* 1298-1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the *risk,* but the actor does not desire harm).

{¶ 17} In its judgment entry filed September 10, 2019 denying the motions for summary judgment, the trial court generally found genuine issues of material fact to exist as to whether appellants were entitled to immunity.  The trial court did not list the material facts at issue.

{¶ 18} Irwin taught the Energy Operations class at Buckeye Career Center.  On the day of the incident, the lesson was about load securement, using chains and snap binders and cheater bars to gain leverage on the handle of the snap binder.  The cheater bar slips over the handle of the snap binder.  The cheater bar in use during the lesson was a fence post driver.  Irwin instructed his students on where to stand while using the tools so as not to be in the "danger zone."  Irwin depo. at 78.  Irwin told the students to "pull the chain binder down, because if it were to get away from them, it just flies up in the air and hurts nothing."  *Id.* at 78-79.  He explained, "[i]f they're pushing down and it gets

away from them, then their body's in that danger zone." *Id.* at 79. He instructed the students on "the procedure to use the cheater bar. The pull method, not the push." *Id.* at 83, 103-104, 115. He conducted two demonstrations for the students, one inside and one outside. *Id.* at 79-80, 81-82, 94-95. He could not recall if he used a cheater bar in the indoor demonstration. *Id.* at 83-84. The cheater bar normally used for the procedure was not outside, so Irwin saw the post hole driver and "I showed them this is what a cheater bar would look like." *Id.* at 95. Irwin explained the fence post driver was "the exact same thing as a bar. The only difference is the, the post hole driver has the two welded handles on it, which can still be used for a cheater bar. It's still the same application." *Id.* at 96, 109. Irwin used the fence post driver in his outdoor demonstration. *Id.* at 99.

{¶ 19} Seese stated Irwin "didn't specifically tell us where to stand whenever using it," but did tell the students "just stay out of the way of them, you know. If they do go to snap, you know, try to keep yourself out of the way if it's possible. If it's possible, stay out of the way." Seese depo. at 18, 20-21. As for pushing or pulling the handle, Seese testified Irwin "said you never know which way you're going to do it in the field. He said you can either push or pull." *Id.* at 19, 30-31. Seese stated during the inside demonstration, Irwin did not use a cheater bar. *Id.* at 21. Irwin did not conduct an outdoor demonstration. *Id.* at 24, 44. Seese and his partner placed the fence post driver over the snap binder handle and pushed down. *Id.* at 27. The fence post driver slipped off the handle and the handle flew backwards and hit him in the face. *Id.*

{¶ 20} Five students in class on the day of the incident were deposed. All agreed Irwin conducted a very short inside demonstration or explanation. James depo. at 14-15;

Armstrong depo. at 13, 26-27; Adkins depo. at 20-21; Morrison depo. at 11, 24-25; Sprankle depo. at 10. Four students remembered Irwin instructing the students as to where to stand and to pull down on the bar. James depo. at 10-12, 30; Armstrong depo. at 13, 30; Adkins depo. at 9-10, 21; Sprankle depo. at 10, 14, 23. Four students agreed Irwin conducted an outdoor demonstration, with three stating Irwin did not demonstrate the use of the cheater bar and one stating that he did. James depo. at 11-12, 16, 29; Adkins depo. at 10-11, 21; Morrison depo. at 12, 25; Sprankle depo. at 11-12, 23. James did not use the fence post driver on his turn. James depo. at 17. He stated some students did not use the fence post driver because "people were concerned that it wasn't working, it was - - wasn't the right shape or design or even a proper cheater bar." *Id.* Armstrong did not think a fence post driver was safe to use as a cheater bar. Armstrong depo. at 28-29. Adkins was not concerned about using the fence post driver as a cheater bar. Adkins depo. at 11, 22. Morrison went after Seese and he did not use the fence post driver. Morrison depo. at 13, 27. He did not think a fence post driver was safe to use as a cheater bar. *Id.* at 27-29, 38. He was concerned for his safety from the start, so he had already decided not to use the fence post driver even before the Seese incident. *Id.* at 33. He believed the fence post driver should not have been used as a cheater bar. *Id.* at 40. Sprankle stated looking back, he did not think it was safe to use the fence post driver as a cheater bar, but at the time, did not think twice about it. Sprankle depo. at 30-31.

{¶ 21} Appellees presented the affidavits of two experts, Robert Reed and David Beros. Each had over thirty-five years of experience in the heavy equipment and transportation industry including training in truck safety and load securement. Mr. Reed

also taught classes in those areas.  Both experts conducted a site inspection at Buckeye

Career Center the day after the incident.  Mr. Reed averred the following at ¶ 39:

> Defendant Irwin's decision to use lever [snap] binders with post drivers as cheater bars, while allowing the students to push down on the post driver created an unnecessary and unreasonable risk of harm that could have been easily prevented by 1) simply not instructing the students on level binders; 2) not instructing the students that it was permissible to turn and push on the level binder, and instead instruct the students that they should always be pulling and never pushing on a level binder; 3) not using a cheater bar at all; 4) if a cheater bar was to be used, using a cheater bar that fit snugly and tightly over the binder handle to ensure that the cheater bar would not slide, shift position, or slip off of the binder handle.

{¶ 22} Mr. Reed further stated at ¶ 41 that Irwin, as an experienced heavy equipment operator and energy operations instructor,

> had reason to know that using a wide open ended post driver as a cheater bar over a narrow tipped level binder handle would create an unreasonably and unnecessary unsafe condition where the post driver could easily slide, shift position, or slip off of the binder handle, and cause the binder handle to violently snap backwards while Mr. Seese was pushing

down on the cheater bar, which in all probability would likely result in serious injury to his students.

{¶ 23} Mr. Reed explained a fence post driver "is not intended to be used as a cheater bar/pipe with a lever binder handle" and a level binder handle "is not intended to be used with a wide diameter open ended post driver as a cheater bar/pipe" because the "width of the tip of a level binder handle is significantly smaller than the width and diameter of the open end of a post driver."  Reed aff. at ¶ 44-46.  In examining the items used at the time of the incident, Mr. Reed concluded the fence post driver "could not operate safely as a cheater bar/pipe over the level binder handle because it could not fit snug and tight over the binder handle to prevent the post driver from slipping or shifting position.  *Id.* at ¶ 52.  He opined at ¶ 53:

This disparity in the width of the tip of the level binder handle when used with the wide open ended post driver created an unnecessarily dangerous condition and perceivable imperfection and condition in both the post driver and the binder handle.  Namely, the post driver did not fit snugly or tightly over the binder handle, creating a dangerous situation where the post driver could easily shift position and slip/slide off of the binder handle, causing the binder handle to suddenly and violently snap backwards, which is exactly what happened to Mr. Seese here.

{¶ 24} "Both the post driver and the level binder handle were not operated as intended, neither were operated safely, and the utility and worth of both the post driver and binder handle were diminished" as both items "lost their ability to function and operate as intended in a safe manner." Reed aff. at ¶ 55.

{¶ 25} Mr. Beros corroborated Mr. Reed's averments. Beros aff. at ¶ 16-17, 21-24, 33-34, 37-38, 42. Mr. Beros stated in his thirty-seven years of field experience, he has never witnessed, read about, or heard of the use of a fence post driver as a cheater bar. Beros aff. at ¶ 25-28.

{¶ 26} Appellants did not present an expert affidavit or deposition.

{¶ 27} As argued by appellees in their appellate brief at 14-16, we agree questions exist as to whether the fence post driver and the snap binder together constituted a physical defect because they did not operate as intended (i.e. safely) due to a perceivable condition (i.e. the fence post driver could shift or slip off causing the snap binder handle to snap backwards) and thus the use of the two items in concert could have diminished the worth or utility of the items and their ability to function in a safe manner.

{¶ 28} Questions also exist as to whether the decision to use a fence post driver as a cheater bar was exercised in a wanton or reckless manner, as well as whether Irwin acted in a wanton or reckless manner. There is conflicting testimony on whether Irwin instructed the students to pull down and then push on the cheater bar, whether he conducted an outdoor demonstration using the fence post driver, and whether he knew

of Seese's location relative to the snap binder handle as Seese attempted to secure the snap binder.[1]

{¶ 29} Upon review, we find the trial court did not err in finding appellants were not covered under the immunity statute and in overruling their motions for summary judgment.

{¶ 30} Assignments of Error I and II are denied.

{¶ 31} The judgment of the Court of Common Pleas of Tuscarawas County, Ohio is hereby affirmed.

By Wise, Earle, J.

Hoffman, P.J. and

Gwin, J. concur.


EEW/db

---

[1] In listing these issues, we are in no way limiting any other arguments advanced by appellees.