[Cite as *R.K. v. Little Miami Golf Ctr.*, 2013-Ohio-4939.]

# IN THE COURT OF APPEALS

# FIRST APPELLATE DISTRICT OF OHIO

# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| R.K., a Minor, Individually and by and Through his Parents and Next Friends, Donald K. and Michelle K., | : | APPEAL NO. C-130087 TRIAL NO. A-1205105 |
| | : | |
| MICHELLE K., | : | *O P I N I O N.* |
| DONALD K., | : | |
| and | : | |
| MEGAN K., | : | |
| Plaintiffs-Appellees, | : | |
| vs. | : | |
| LITTLE MIAMI GOLF CENTER, | : | |
| HAMILTON COUNTY PARK DISTRICT, | : | |
| | : | |
| HAMILTON COUNTY PARK DISTRICT—SAFETY DIVISION, | : | |
| and | : | |
| DENNIS WELLS, Individually and in his Official Capacity, | : | |
| | : | |
| Defendants-Appellants, | : | |
| and | : | |
| BOARD OF COMMISSIONERS OF HAMILTON COUNTY, OHIO, | : | |
| STATE OF OHIO, | : | |
| and | : | |
| JOHN DOES 1-60, | : | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause Remanded

Date of Judgment Entry on Appeal: November 8, 2013

*Rendigs, Fry, Kiely & Dennis, LLP, Peter L. Ney*, *John F. McLaughlin* and *Arthur E. Phelps, Jr.,* for Plaintiffs-Appellees,

*Schroeder, Maundrell, Barbiere & Powers*, *Lawrence E. Barbiere* and *Michael E. Maundrell*, for Defendants-Appellants.

Please note:  this case has been removed from the accelerated calendar.

**FISCHER, Judge.**

{¶1} This appeal addresses whether defendants-appellants Little Miami Golf Center (the "Golf Center"), Hamilton County Park District, Hamilton County Park District—Safety Division (collectively the "Park District"), and Dennis Wells, a golf professional at the Golf Center, are entitled to immunity under R.C. Chapter 2744, the Political Subdivision Tort Liability Act, from claims brought by a child, R.K., and his family, Michelle, Donald, and Megan (collectively "Plaintiffs") for injuries R.K. sustained as a result of a falling tree limb on a golf course.

## I.  Factual Background as Alleged in Complaint

{¶2} Because this is an appeal from a denial of judgment on the pleadings, we must construe the factual allegations in Plaintiffs' complaint as true. *Corporex Dev. & Constr. Mgt. v. Shook, Inc.*, 106 Ohio St.3d 412, 2005-Ohio-5409, 835 N.E.2d 701. According to those allegations, on September 14, 2008, R.K., then 12 years old, and three other boys approximately the same age paid to play golf at the Golf Center, which is owned, operated, and maintained by the Hamilton County Park District. The Golf Center operates a golf course, which caters to children by offering a "junior" rate for a 9-hole, par-3 course with holes ranging from 75 to 140 yards in length. While the boys were on the course, a windstorm from Hurricane Ike overtook the area, and a large branch from a maple tree overhanging the eighth green fell on R.K.'s head, resulting in serious and permanent injury.

{¶3} According to Plaintiffs' allegations, the tree had been leaning excessively and directly over the walkway portion of the eighth green prior to the storm, and the tree had an unpruned canopy and was structurally unbalanced. Prior to R.K.'s injury, the National Weather Service had issued a severe-weather

"warning"—meaning that severe weather had been spotted in the area. Also prior to the injury, employees of the Golf Center had closed its doors and had begun turning away other prospective golfers because of the weather, but no one had attempted to warn R.K. regarding the storm or the tree branch. Although the Golf Center had storm sirens, those sirens were either not working or not used. Nor did R.K. receive any guidance from Wells or anyone else on how to seek shelter during adverse weather.

{¶4} Plaintiffs filed a complaint against defendants-appellants, including claims against Wells in his official and individual capacities, as well as the Board of Commissioners of Hamilton County, the State of Ohio, and John Does 1-60 (collectively "Defendants"). Plaintiffs allege that Defendants acted negligently or recklessly in (1) designing the golf course, (2) failing to maintain the hazardous tree, (3) failing to warn R.K. of the impending severe weather, (4) failing to provide staff, such as security patrols or course rangers, before and during the storm, (5) failing to provide storm shelters, (6) failing to adopt and/or implement a severe-weather plan, (7) failing to ensure that storm sirens were functioning properly or not using the sirens, (8) failing to adopt and/or implement a plan to monitor adverse weather, and (9) failing to adopt and/or implement a plan to monitor children. Plaintiffs also brought claims for spoliation, punitive damages, declaratory judgment that R.C. Chapter 2744 is unconstitutional as applied, and loss of consortium.

{¶5} Defendants-appellants filed a motion for judgment on the pleadings on the ground of political-subdivision immunity, which the trial court denied in its entirety. Defendants-appellants now appeal from the denial of their motion, raising in a single assignment of error that the trial court erred in denying their motion.

Defendants-appellants' brief addresses all of Plaintiffs' claims, except those for loss of consortium.

## II.    Jurisdiction and Standard of Review

{¶6}    Under R.C. 2744.02(C), a political subdivision or an employee of a political subdivision can appeal from an order denying R.C. Chapter 2744 immunity, even though the order does not contain Civ.R. 54(B) certification. *See Sullivan v. Anderson Twp.*, 122 Ohio St.3d 83, 2009-Ohio-1971, 909 N.E.2d 88, ¶ 13. Therefore, this court has jurisdiction to review the trial court's order denying immunity to defendants-appellants even though claims against multiple parties remain unresolved by the order.

{¶7}    We review a trial court's decision on a motion for judgment on the pleadings under Civ.R. 12(C) de novo. *Perrysburg Twp. v. City of Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. Judgment on the pleadings under Civ.R. 12(C) is restricted to the allegations in the pleadings and may be granted when, construing all material allegations in the complaint, with all reasonable inferences drawn therefrom in favor of the nonmoving party, no material factual issues exist and the moving party is entitled to judgment as a matter of law. *Bennett v. Ohio Dept. of Rehab. & Corr.*, 60 Ohio St.3d 107, 573 N.E.2d 633, 635 (1991). This standard is a high one, and different from that of summary judgment. *Compare* Civ.R. 56(C) (where summary judgment may be granted only when it appears from the evidence that reasonable minds can come to but one conclusion, and with the evidence construed most strongly in favor of the nonmoving party, that conclusion is adverse to that party).

### III. Three-Tiered Analysis

{¶8} R.C. Chapter 2744 sets forth a rather involved three-tiered analysis for determining whether a political subdivision is immune from liability. *Hubbard v. Canton Cty. School Bd. of Edn.*, 97 Ohio St.3d 451, 2002-Ohio-6718, 780 N.E.2d 543, ¶ 10. First, R.C. 2744.02(A)(1) sets forth the general grant of immunity for political subdivisions for damages in a civil action allegedly caused by any act or omission of a political subdivision or employee in connection with a governmental or proprietary function. Second, the immunity afforded to a political subdivision under R.C 2744.02(A)(1) is subject to the exceptions to immunity listed in R.C. 2744.02(B). Third, if one or more exceptions apply, immunity can be reinstated if the political subdivision can show that one of the defenses contained in R.C. 2744.03 applies. *Cater v. Cleveland*, 83 Ohio St.3d 24, 697 N.E.2d 610 (1998).

### A. First Tier: General Grant of Immunity

{¶9} The first tier of immunity in R.C. 2744.02(A)(1) only applies to a political subdivision or an employee of a political subdivision in connection with a governmental or proprietary function. R.C. 2744.01(F) defines a political subdivision as a "municipal corporation, township, county, school district, or other body corporate and politic responsible for governmental activities in a geographic area smaller than that of the state." Plaintiffs argue that the Park District does not qualify as a political subdivision because (1) a "park district" created under R.C. Chapter 1545 is not specifically enumerated in R.C. 2744.01(F), and (2) the Park District's operation of the golf course is a proprietary activity.

{¶10} As to Plaintiffs' first argument, R.C. 2744.01(F) by its own language does not provide an exhaustive list of political subdivisions, and Plaintiffs do not

dispute that the Park District is generally responsible for governmental activities in a geographic area smaller than the state. *See Schenkolewski v. Cleveland Metroparks Sys.*, 67 Ohio St.2d 31, 34, 426 N.E.2d 784 (1981). Plaintiffs rely on *Schenkolewski*, however, to argue that the Park District receives a fee from participants who use the Golf Center, so R.C. 2744.01(F) should not apply. The court in *Schenkolewski* determined that immunity did not apply to a park district performing a "proprietary function" of operating a zoo. *Id.* at paragraph two of the syllabus. But, *Schenkolewski* was concerned with the common-law distinction between governmental and proprietary functions and has no applicability in determining whether the Park District is a political subdivision under R.C. 2744.01(F) in the first instance.

{¶11} Other courts have found a park district to be a political subdivision. *See Wolanin v. Holmes*, 8th Dist. Cuyahoga No. 88454, 2007-Ohio-3410, ¶ 10, citing *Willoughby Hills v. Bd. of Park Commrs.*, 3 Ohio St.2d 49, 51, 209 N.E.2d 162 (1965); *Nelson v. Bd. of Park Commrs. of Conneaut Twp. Park Dist.*, 11th Dist. Ashtabula No. 2001-A-0016, 2001 Ohio App. LEXIS 6001, *20 (Dec. 28, 2001). Therefore, we hold that the Park District is a political subdivision.

{¶12} In addition to the political-subdivision requirement, in order to invoke the first-tier general grant of immunity, the act or omission of a political subdivision or employee must be in connection with a governmental or proprietary function. R.C. 2744.01(C)(2)(u)(v) specifically provides that a "governmental function" includes "[t]he design, construction, reconstruction, renovation, repair, maintenance, and operation of * * * a golf course[.]"

7

{¶13} Plaintiffs argue that the Park District operates more than just a golf course at the Golf Center, including, for example, hayrides and rollerskating. The scope of activities offered at the Golf Center is not included in either Plaintiffs' complaint or the Park District's answer, and thus is not properly considered for purposes of a motion for judgment on the pleadings. *See Bennett*, 60 Ohio St.3d 107, 573 N.E.2d 633, 635. Moreover, Plaintiffs specifically allege that R.K.'s injury occurred on the golf course while R.K. was playing golf. In light of Plaintiffs' allegations, the Park District was engaged in the statutorily-created governmental function of operating a golf course under R.C. 2744.01(C)(2)(u)(v).

{¶14} Because the Park District is a political subdivision and was engaged in a governmental function in connection with R.K.'s injury, the Park District has established entitlement to the general grant of immunity under R.C. 2744.02(A)(1).

## B. Second Tier: Physical-Defect Exception

{¶15} After determining that the general grant of immunity applies to the Park District, we now turn to whether any exceptions to immunity listed in R.C. 2744.02(B) apply to reinstate Plaintiffs' claims. Plaintiffs argue that R.C. 2744.02(B)(4) applies, which creates liability for political subdivisions "for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function * * *." To establish the physical-defect exception, a plaintiff must allege that the injury, death, or loss (1) resulted from employee negligence, (2) occurred within or on the grounds of buildings used in connection with a governmental function, and (3) resulted from a physical defect

8

within or on the grounds of buildings used in connection with a governmental function. *See Leasure v. Adena Local School Dist.*, 2012-Ohio-3071, 973 N.E.2d 810, 814 (4th Dist.); *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 25.

### 1. Physical Defect

{¶16} We address the third prong of the physical-defect exception first, which requires that the injury result from a physical defect. Although "physical defect" is not defined in R.C. Chapter 2744, courts have defined a physical defect as "a perceivable imperfection that diminishes the worth or utility of the object at issue." *See Hamrick* at ¶ 28; *Leasure* at 815; *Gibbs v. Columbus Metro. Hous. Auth.*, 10th Dist. Franklin No. 11AP-711, 2012-Ohio-2271, ¶ 13; *Duncan v. Cuyahoga Community College*, 2012-Ohio-1949, 970 N.E.2d 1092, ¶ 26 (8th Dist.).

{¶17} In *Leasure*, the plaintiff argued that bleachers constituted a physical defect. The plaintiff presented evidence that the failure to properly set up bleachers in a school gymnasium had caused the bleachers to become unstable. The bleachers then had moved, causing one step to be shorter than the rest, and the plaintiff had tripped. The court determined that the trial court properly denied summary judgment for the school district on immunity grounds because a genuine issue of material fact existed as to whether the bleachers constituted a physical defect within the meaning of R.C. 2744.02(B)(4). *Leasure* at 817-818.

{¶18} In another case, a school band member had been injured by a metal object that had been ejected from a lawnmower. *DeMartino v. The Poland Local School Dist.*, 7th Dist. Mahoning No. 10 MA 19, 2011-Ohio-1466. According to the band member's complaint, a school employee had been operating the lawnmower

9

without the required discharge chute. On review of the trial court's denial of a motion for judgment on the pleadings on immunity grounds, the court held that the lawnmower could constitute a physical defect. *Id.* at ¶ 43.

{¶19} At least one other Ohio appellate court has determined that an unmaintained tree limb qualifies as a physical defect. *See Mathews v. Waverly*, 4th Dist. Pike No. 08CA78, 2010-Ohio-347. In *Mathews*, a woman had been standing in the parking lot of a city-owned park when a tree limb had fallen on her. The woman and her husband alleged in their complaint that the city had negligently maintained the tree. In determining that the trial court properly denied summary judgment on immunity grounds, the court held that the physical-defect exception applied as an exception to immunity. *Id.* at ¶ 36.

{¶20} The Park District argues that the physical-defect exception to immunity does not apply because the tree limb broke under the force of Hurricane Ike. Plaintiffs disagree that the winds were the proximate cause of R.K.'s injury, and instead allege that the failure to maintain the tree caused the injury. When viewing the allegations in the light most favorable to Plaintiffs at the Civ.R. 12(C) stage, an unmaintained tree limb might be a physical defect.

{¶21} Aside from the failure to maintain the tree in this case, Plaintiffs' complaint also alleges that the Golf Center's storm sirens were not used or maintained properly and may have been broken. In so far as the Plaintiffs allege that the sirens were not maintained, the storm sirens may constitute physical defects as well.

## 2. Employee Negligence

{¶22} As to the next prong of R.C. 2744.02(B)(4), employee negligence, the Park District argues that R.K.'s injury resulted from the winds of Hurricane Ike and not from employee negligence. Plaintiffs allege that R.K.'s injury was proximately caused by an employee's negligence or recklessness in the location and maintenance of the tree, in failing to repair or use the storm sirens, or in failing to take other appropriate warning and safety measures. At this motion-for-judgment-on-the-pleadings stage, Plaintiffs have sufficiently alleged employee negligence as the cause of R.K.'s injury.

## 3. Grounds of Buildings Used in Connection with a Governmental Function

{¶23} Finally, the physical-defect exception requires that the injury occur within or on the grounds of buildings used in connection with the performance of a governmental function. *See Dornal v. Cincinnati Metro. Hous. Auth.*, 1st Dist. Hamilton No. C-100172, 2010-Ohio-6236, ¶ 14 ("R.C. 2744.02(B)(4) reflects a legislative intent to restrict a political subdivision's liability to losses or injuries that occur in government buildings *or on their grounds*.") (Emphasis added.) Similarly, the physical defect must occur within or on the grounds of buildings used in connection with the performance of a governmental function.

{¶24} In determining whether a building is used in connection with a governmental function, the building need not "house the actual, physical operations, maintenance, etc., of a governmental body," but instead the question is "whether the building is logically, not literally, connected to the performance of a governmental function." *Mathews*, 4th Dist. Pike No. 08CA787, 2010-Ohio-347, at ¶ 32, citing

*Moore v. Lorain Metro. Hous. Auth.*, 121 Ohio St.3d 455, 2009-Ohio-1250, 905 N.E.2d 606 (holding that a public-housing unit is a building "used in connection with the performance of a governmental function" for purposes of R.C. 2744.02(B)(4)).

{¶25} In *Mathews*, where a woman had been hit with a fallen tree limb in the parking lot of a city-owned park, the city contended that the trial court erred in applying R.C. 2744.02(B)(4) because the injury did not occur within or on the grounds of buildings used in connection with the performance of a governmental function. The city made two arguments in support of its contention: (1) the immediate grounds of the park did not include any buildings used in connection with the performance of a governmental function, and (2) the municipal building located nearby was located on a separate parcel of property, which could not constitute the same "grounds" as the park.

{¶26} In addressing the city's first argument, the *Mathews* court determined that shelters and roofed pagodas in the park constituted buildings in connection with a governmental function where the statutory definition of "governmental function" includes operating a park under R.C. 2744.01(C)(2)(u)(i). Although the city did not actually operate the park from those buildings, the *Mathews* court determined that the buildings were still logically connected to "the performance of the operation or maintenance of the park" in that they were used for various events at the park and available for public use. *Mathews*, 4th Dist. Pike No. 08CA787, 2010-Ohio-347, at ¶ 35, relying on *Moore*. Thus, the court upheld the trial court in determining that the physical-defect exception applied to the facts of the case. *Id.* at ¶ 36.

{¶27} Although the *Mathews* court disposed of the city's first argument with regard to R.C. 2744.02(B)(4), the court also addressed the city's second argument as

12

to whether the park was on the "grounds" of the municipal building. The city argued that the municipal building and the park were not on the same "grounds" because they were not located within the same parcel of property or within the same legal boundary. That court rejected the city's argument and instead applied the plain meaning of "grounds," which includes "an area of land devoted to and equipped for some special purpose * * *" or "the area around and belonging to a house or other building." *Mathews* at ¶ 38, citing *Webster's Encyclopedic Dictionary of the English Language* 424 (1989) and *Merriam-Webster's Online Dictionary*, http://www.merriam-webster.com/dictionary/grounds. (Internal quotations omitted.) The court determined that a genuine issue of material fact existed as to whether the municipal building and the park were on the same grounds. *Id.* at ¶ 40.

{¶28} Just as the shelters and roofed pagodas constituted buildings in *Mathews*, the Golf Center qualifies as a building used in connection with the performance of the governmental function of the operation of a golf course under R.C 2744.01(C)(2)(u)(v). Using the plain meaning of the word "grounds" as the court did in *Mathews*, the eighth green of the golf course is part of the land around the Golf Center and is obviously devoted to the same purpose as the Golf Center, golfing. Furthermore, Plaintiffs specifically allege that the Park District operates the golf course from the Golf Center, and that R.K. and his friends paid to play golf at the Golf Center, and the Golf Center had an onsite PGA professional, Wells.

{¶29} The Park District, as the moving party, has not shown it is entitled to judgment as a matter of law as to the physical-defect exception to immunity under R.C. 2744.02(B)(4), so we now must address whether any defenses to reinstate immunity apply.

13

## C.    Third Tier: Defenses to Reinstate Immunity

{¶30}  The Park District argues that even if the exception to immunity in R.C. 2744.02(B)(4) applies, the defenses in R.C. 2744.03(A)(3) and (5) apply to reinstate immunity.  R.C. 2744.03(A)(3) restores immunity for the political subdivision "if the action or failure to act by the employee involved that gave rise to the claim of liability was within the discretion of the employee with respect to policy-making, planning, or enforcement powers by virtue of the duties and responsibilities of the office or position of the employee."  R.C. 2744.03(A)(5) restores immunity for the political subdivision "if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶31}  R.C. 2744.03(A)(3) and 2744.03(A)(5) defenses protect the exercise of discretion and judgment.  *See Hall v. Bd. of Edn., Fort Frye Local School Dist.*, 111 Ohio App.3d 690, 676 N.E.2d 1241 (4th Dist.1996) ("Immunity operates to protect political subdivisions from the liability based upon discretionary judgments concerning the allocation of scarce resources; it is not intended to protect conduct which requires very little discretion or independent judgment.").  The defenses are not meant to protect conduct in carrying out an activity.  *See Kenko Corp. v. City of Cincinnati*, 183 Ohio App.3d 583, 2009-Ohio-4189, 917 N.E.2d 888, ¶ 36 (1st Dist.).

{¶32}  Decisions regarding routine maintenance and operation do not involve the exercise of judgment, as opposed to those regarding whether to acquire or how to use property.  *See McVey v. City of Cincinnati*, 109 Ohio App.3d 159, 163, 671 N.E.2d

14

1288 (1st Dist.1995) (decision to install escalators in a stadium parking facility involves discretion, but the operation of the escalators does not); *see also Hall* at 700 (maintenance of an irrigation system on a high school practice field does not involve the exercise of judgment or discretion, but the initial decision to install the system is immune); *Leasure*, 2012-Ohio-3071, 973 N.E.2d 810, 819 (employee's failure to properly set up bleachers in school gymnasium does not involve an exercise of judgment, although discretion was exercised in the decision to install the bleachers).

{¶33} In determining whether the Park District has shown any defenses to reinstate immunity, we must analyze the specific allegations in Plaintiffs' claims.

### 1. Design and Maintenance of Golf Course

{¶34} Count One of Plaintiffs' complaint alleges that the Park District was negligent and/or reckless in designing the golf course. In Count Two, Plaintiffs allege that the Park District was negligent and/or reckless in maintaining the tree. The Fourth Appellate District considered whether R.C. 2744.03(A)(3) or 2744.03(A)(5) applied to the placement and maintenance of a tree in *Frederick v. Vinton Cty. Bd. of Edn.*, 4th Dist. Vinton No. 03CA579, 2004-Ohio-550. In *Frederick*, a seven-year-old girl died during school recess after she fell from a tree. The plaintiff alleged that the school had negligently maintained the tree and area surrounding the tree by failing to trim low-hanging branches that children could reach or by failing to take another measure to ensure that the tree did not pose a safety hazard. In determining whether R.C. 2744.03(A)(3) or 2744.03(A)(5) applied to plaintiff's negligent-maintenance claim, that court reasoned that "decisions in this case relating to whether to have trees on the playground, how many trees, or where they should be placed, are discretionary decisions. * * * However, the School's duty

to ensure that the tree, like any other fixture on the playground, did not pose a safety hazard is a maintenance issue." *Id.* at ¶ 38. The court then determined that a genuine issue of material fact existed with respect to whether the school had negligently maintained the playground.

{¶35} Applying *Frederick*, design of the golf course is a discretionary decision as to planning under R.C. 2744.03(A)(3), and therefore, immunity applies to the Park District as to Plaintiffs' negligent/reckless-design claim. Maintaining the tree so as not to become a safety hazard is not a discretionary decision, and therefore, neither (A)(3) nor (A)(5) apply as a defense to liability.

## 2. Operation of the Golf Course and Failure to Adopt/Implement Plans

{¶36} In Counts Three through Six, Plaintiffs allege that the Park District acted negligently and/or recklessly by: (1) failing to ensure that the storm sirens were functioning properly or failing to use the sirens; (2) failing to adopt and/or implement a severe-weather plan, such as providing storm shelters; (3) failing to adopt and/or implement a plan to monitor adverse weather; (4) failing to adopt and/or implement a plan to care for minor children; (5) failing to warn R.K. of the impending weather, while turning away other golfers; and (6) failing to provide staff, such as security patrols or course rangers, before and during the storm.

{¶37} At this Civ.R. 12(C) stage, Plaintiffs' allegation that the Park District failed to use or maintain the storm sirens is not discretionary in nature, and so neither R.C. 2744.03(A)(3) nor 2744.03(A)(5) apply to reinstate immunity for the Park District.

{¶38} As to Plaintiffs' allegations that the Park District negligently and/or recklessly failed to adopt and/or implement plans for severe weather, monitoring

16

adverse weather, and care for children, these allegations involve discretionary decisions as to policy-making and planning under R.C. 2744.03(A)(3). Thus, the Park District is entitled to the reinstatement of immunity for these allegations.

{¶39} Plaintiffs' allegations that the Park District negligently and/or recklessly failed to warn R.K. of the impending weather, while turning away other golfers, and failed to provide staff, such as security patrols or course rangers, before and during the storm would be discretionary decisions under R.C. 2744.03(A)(5) as to an allocation of personnel with respect to supervision. *See Frederick*, 4th Dist. Vinton No. 03CA579, 2004-Ohio-550, at ¶ 43 (where the plaintiff alleged that the school had negligently or recklessly assigned only one teacher to supervise the students at recess, and the court determined that the supervision of students was a discretionary decision as to allocation of personnel under R.C. 2744.03(A)(5)).

{¶40} R.C. 2744.03(A)(5) does not operate to reinstate immunity for judgment or discretion exercised with malicious purpose, in bad faith, or in a wanton or reckless manner. Plaintiffs argue that the Park District's conduct amounts to at least recklessness. An actor's conduct is reckless if it is "characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct." *Anderson v. Massillon*, 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, paragraph four of the syllabus.

{¶41} Plaintiffs allege that, prior to R.K.'s injury, the National Weather Service had issued a severe-weather warning for the area encompassing the Golf Center. Other potential golfers were allegedly turned away because of the weather, yet no one warned R.K. These allegations, if true, may establish reckless conduct on

17

the part of the Park District as to Plaintiffs' failure-to-warn claim. However, Plaintiffs do not allege any facts that could constitute recklessness with regard to their claim for failure to provide staff, such as security patrols or course rangers. Therefore, the Park District has established immunity on Plaintiffs' claim for failure to provide staff.

{¶42} In summary, as to Counts Three through Six, the Park District is not entitled to immunity on Plaintiffs' allegations for failure to use or maintain the storm sirens and failure to warn R.K. of the impending weather. The remaining allegations in Counts Three through Six against the Park District must be dismissed.

### IV. Counts One Through Six Against Wells

{¶43} Plaintiffs brought identical claims against the Park District and Wells, in both his official and individual capacities. As to claims against Wells in his official capacity, he is entitled to the same immunity as the Park District. *See Digiorgio v. City of Cleveland*, 8th Dist. Cuyahoga No. 95945, 2011-Ohio-5878, ¶ 32 ("[A] suit against an employee of a political subdivision in the employee's official capacity is an action against the entity itself and the employees are entitled to the same immunity due the political subdivision.").

{¶44} As to Plaintiffs' claims against Wells in his individual capacity, R.C. 2744.03(A)(6) provides immunity to an employee sued in an individual capacity unless:

> (a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or

18

in a wanton or reckless manner; [or] (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code.

{¶45} Plaintiffs do not allege that Wells acted manifestly outside the scope of his employment agreement or official responsibilities, or that civil liability is expressly imposed on Wells by a section of the Revised Code. Plaintiffs do allege, however, that each defendant, including Wells, acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Therefore, we must consider whether Plaintiffs' allegations sufficiently raised the exception set forth in R.C. 2744.03(A)(6)(b).

{¶46} The only allegations specific to Wells in Plaintiffs' complaint state that Wells was the onsite PGA professional at the Golf Center, and that "the golf professional * * * failed to provide [R.K.] with any instruction or guidance with regard to seeking shelter or protecting himself from adverse weather." These allegations are insufficient to establish that Wells acted with malicious purpose, in bad faith, or in a wanton or reckless manner. Therefore, Wells, in his individual capacity, is entitled to immunity as to Counts One through Six.

## V. Spoliation and Punitive Damages

{¶47} Plaintiffs' complaint also includes a request for punitive damages and, in Count Nine, a spoliation claim. With regard to punitive damages, Plaintiffs concede that punitive damages cannot be awarded against a political subdivision performing a governmental function. *See* R.C. 2744.05(A); *see also Haas v. Village of Stryker*, 6th Dist. Williams No. WM-12-004, 2013-Ohio-2476, ¶ 47. Because the Park District was engaged in the performance of the governmental function of

operating a golf course in connection with R.K.'s injury, Plaintiffs' punitive-damages claim against the Park District and Wells in his official capacity fails as a matter of law.

{¶48} Punitive-damages claims may be brought against employees in their individual capacities if those employees act outside the scope of their employment by acting with a malicious purpose. *Haas* at ¶ 47, citing *Hope Academy Broadway Campus v. Integrated Consulting & Mgt.*, 8th Dist. Cuyahoga Nos. 96100 and 96101, 2011-Ohio-6622, ¶ 21. As stated above, Plaintiffs do not allege any facts that, if proven, would show Wells acted outside the scope of his employment by acting with a malicious purpose. Therefore, Wells, individually, is entitled to judgment as a matter of law on Plaintiffs' punitive-damages claim.

{¶49} As to Plaintiffs' intentional-tort claim for spoliation in Count Nine, Plaintiffs allege that defendants-appellants immediately altered, destroyed, and removed the tree and fallen branches, which prejudiced their ability to prove their case. The physical-defect exception in R.C. 2744.02(B)(4) does not apply to intentional torts, however, leaving the general grant of immunity intact. *See, e.g.*, *Havely v. Franklin Cty.*, 10th Dist. Franklin No. 07AP-1077, 2008-Ohio-4889, ¶ 53. Nor do Plaintiffs allege intentional conduct on the part of Wells individually. Therefore, the Park District and Wells in his official and individual capacities are entitled to judgment as a matter of law as to Plaintiffs' spoliation claim.

## VI. Unconstitutionality of R.C. Chapter 2744

{¶50} In Counts Ten and Eleven, Plaintiffs seek declaratory judgments that R.C. Chapter 2744 is unconstitutional as applied. Defendants-appellants argue that the trial court erred in denying their motion for judgment on the pleadings as to

these claims. The Ohio Supreme Court has repeatedly upheld the constitutionality of R.C. Chapter 2744. *See Fabrey v. McDonald Village Police Dept.*, 70 Ohio St.3d 351, 355, 639 N.E.2d 31 (1994); *O'Toole v. Denihan*, 118 Ohio St.3d 374, 2008-Ohio-2574, 889 N.E.2d 505, ¶ 95. Therefore, no material factual issues exist with respect to Plaintiffs' declaratory-judgment claims, and defendants-appellants are entitled to judgment as a matter of law.

## VII. Conclusion

{¶51} We overrule defendants-appellants' assignment of error in so far as we affirm the judgment of the trial court as to Plaintiffs' claims against the Park District and Wells in his official capacity for (1) negligent/reckless repair and maintenance of the tree in Count Two, and (2) failure to use or maintain the storm sirens and failure to warn R.K. as stated in Count Three. We sustain defendants-appellants' assignment of error, and the judgment of the trial court is reversed, and the case is remanded to the trial court with instructions to enter judgment in favor of defendants-appellants on (1) Count One, (2) the remaining allegations in Count Three, (3) Counts Four, Five, Six, Nine, Ten, and Eleven, (4) the request for punitive damages, and (5) all Counts against Wells in his individual capacity.

Judgment affirmed in part, reversed in part, and cause remanded.

DINKELACKER, P.J., and DEWINE, J., concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.