[Cite as *Stealey v. Belpre City School Dist.*, 2025-Ohio-4899.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| BARBARA STEALEY, | : | |
| | : | |
| Plaintiff-Appellant, | : | Case No. 25CA18 |
| | : | |
| v. | : | |
| | : | |
| BELPRE CITY SCHOOL DISTRICT, | : | <u>DECISION AND JUDGMENT ENTRY</u> |
| | : | |
| Defendant-Appellee. | : | |
| | : | **RELEASED 10/17/2025** |

_____
<u>APPEARANCES:</u>

Ethan Vessels, Fields, Dehmlow & Vessels, LLC, Marietta, Ohio for Plaintiff-Appellant.

Thomas N. Spyker and Michael J. Valentine, Reminger Co., LPA, Columbus, Ohio for Defendant- Appellee.

_____

Hess, J.

{¶1} Barbara Stealey appeals the judgment of the Washington County Court of Common Pleas granting summary judgment in favor of Belpre City School District ("School") on her negligence claim for injuries she sustained when she tripped on a mat in the gymnasium while attending a funeral service. Stealey contends that the trial court erred in granting summary judgment to the School because: (1) the School was not immune from liability because a School employee's negligence caused her injuries; (2) the hazard was not open and obvious because she was not required to be constantly looking down for hazards; and (3) she was a social guest, not a licensee, and therefore the School had a duty to exercise ordinary care and there was a genuine issue of material fact concerning whether the School exercised such care.

**{¶2}** The School argues that it is a political subdivision and is immune from liability because Stealey has failed to allege or present evidence that there was a physical defect within or on the grounds of the gymnasium. And, even if the mats constituted a physical defect, Stealey has no evidence that the use of the mats was done with malicious purpose, bad faith, or in a wanton or reckless manner. Thus, the School argues that the trial court's finding that it is entitled to immunity is correct and should be affirmed. The School also asserts that Stealey relies on inapplicable case law and inadmissible evidence to impose a heightened standard of care and that she can point to no facts that negate the open and obvious nature of the hazard. Finally, the School asserts that the trial court properly characterized Stealey as a licensee because she was there to attend a funeral, which conferred no personal benefit upon the School.

**{¶3}** We find that the trial court properly granted summary judgment in favor of the School on its political immunity defense. Stealey presented no evidence that a physical defect existed in the gymnasium mats, either inherently or due to the nature in which they were set up. We overrule her sole assignment of error and affirm the trial court's judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

**{¶4}** In February 2023, the School hosted a funeral service in the gymnasium. The School staff set up the gymnasium by cleaning it, setting up chairs and bleachers, and placing protective mats on the floor. Stealey attended the funeral. She entered the lobby and proceeded to the gymnasium, stepping directly onto the mats as she walked into the gymnasium and down the aisle to a

row of chairs. As she walked down the row, Stealey caught her foot on a mat, fell forward, and broke her arm. She was 89 years old at the time of the fall.

{¶5}    After Stealey filed her lawsuit, she began to suffer from dementia, could not remember the fall, and was incompetent to testify. Thus, the account of her fall comes from video footage from the School's cameras.[1] Stealey had fallen three times prior to the funeral, but was not injured. She had fallen three times in the 12 months following the funeral, suffering a broken hip and a broken pelvis in two of the falls. Stealey had also suffered a possible mini-stroke prior to the funeral in January 2023 and her physician suspended her driving privileges for six weeks. She had just regained them the day before the funeral.

{¶6}    Scott Trew, the facilities and transportation director of the School at the time of the funeral, gave deposition testimony about the mats. He testified that the protective mats were made of very thick vinyl material and were placed down over the entire floor and were flattened. The mats were very large and were used to cover the entire gymnasium floor. The staff would lay out the mats, flatten them, and place chairs on top. The School had used the same mats repeatedly for events such as graduations, dances, and assemblies for many years without incident. School staff would place the mats down and ensure they laid flat but did not tape the mats to the gymnasium floor.

{¶7}    The video from the School's cameras showed that Stealey and a companion entered the lobby and proceeded to the gymnasium entrance. Stealey

---

[1] Stealey's daughter provided deposition testimony about Stealey's fall history, injuries, medical care, and dementia. The deposition was filed by the School in support of its summary judgment motion.

held the hand of her companion as she walked through the lobby and over two black lobby floor mats. Video from the interior of the gymnasium shows Stealey and her companion enter the gymnasium. The floor of the gymnasium was covered entirely by large vinyl matting distinctly different from the wood gymnasium flooring, and which laid flat and flush with the floor. Stealey and her companion walked across the floor mats and traversed approximately two-thirds of the gymnasium floor atop the matting without incident. Stealey continued to hold her companion's hand as she walked across the gymnasium mats. The two approached an aisle of chairs and turned to enter the aisle. At this point, Stealey had released her companion's hand, stepped forward, and tripped over a flattened section of a mat – the mat's edge was not raised, buckled, curled, gaping, or otherwise elevated, but was laying flush with the floor. As Stealey moved forward into the row, her right foot wedged underneath the mat and she fell forward, lifting the mat's edge with her forward motion.

{¶8}    The School filed a motion for summary judgment in which it argued that it was entitled to immunity because Stealey did not establish a physical defect. Stealey did not allege that the mats were in a defective condition but instead claimed that the mats should have been taped to the floor. The School argued in the alternative, that even if the mats were defective, the School's immunity was reinstated because she had no evidence that the School acted "with malicious purpose, in bad faith, or in a wanton or reckless manner."

{¶9}    The School also argued that even if it were not immune from tort liability, Stealey's negligence claim fails as a matter of law because any danger

associated with the mats was open and obvious. And, because Stealey was a licensee, the only duty the School owed her was to refrain from wantonly or willfully causing injury and there was no evidence that the School acted wantonly or willfully in its duty towards Stealey.

{¶10} Stealey opposed the motion. Stealey argued that the School's failure to tape down the mats' edges created a trip hazard, was negligent, and caused her injuries. She also argued the mats were not open and obvious and that she was a social guest, deserving of a higher duty of care than a licensee. Stealey attempted to show the School acted negligently by introducing evidence that the School began taping the edges after Stealey's fall. Stealey also attempted to introduce an expert report which concluded that the School should have taped the edges and their failure to do so caused Stealey's injuries. The School objected to Stealey's attempt to use the School's subsequent remedial measures to prove negligence under Evid.R. 407, which bars it for that purpose. The School also objected to the use of the expert report because it did not contain the expert's education, experience, or credentials and it was not authenticated by affidavit. Therefore, it was not proper evidence under Civ.R. 56(C).

{¶11} The trial court granted the School's summary judgment motion. Although the School made a timely objection to the evidence of remedial measures and the expert report and asked the trial court to disregard it, the trial court did not address the School's objection in its decision. However, the trial court did not reference the remedial measures or the expert's report in its decision. Thus, it appears that the trial court did not rely upon this evidence in reaching its decision:

The Court finds that Belpre is immune from tort liability as a political subdivision engaging in a government function. Further, there is no evidence that Belpre's judgment in placing the mats was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

The Court further finds that any danger caused by the mats was open and obvious. They were not hidden and Belpre did nothing to distract Mrs. Stealey from discovering any danger possessed by the mats.

The Court further finds that Mrs. Stealey was at the high school gymnasium to attend a funeral. Belpre received no economic or tangible benefit from her presence on the premises. As such Mrs. Stealey was a licensee. Belpre did not wantonly or willfully cause injury to her. Belpre is not liable for ordinary negligence to a licensee.

Wherefore, the Court finds that Belpre's Motion for Summary Judgment is well taken and is granted. The Complaint filed against Belpre is dismissed. Costs are assessed to the Plaintiff.

## II.      ASSIGNMENT OF ERROR

**{¶12}** Stealey raises the following assignment of error:

1. The trial court erred in granting summary judgment in favor of Defendant Belpre City School District.

## III. LEGAL ANALYSIS

### A. Summary Judgment

**{¶13}** Stealey contends that the trial court's summary judgment is erroneous because the School was not entitled to immunity, the mats were not open and obvious, and she was a social guest and was owed a duty of ordinary care.

### 1. Standard of Review & Scope of Evidence

**{¶14}** We review the trial court's decision on a motion for summary judgment de novo. *Smith v. McBride*, 2011-Ohio-4674, ¶ 12. Accordingly, we afford

no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate. *Harter v. Chillicothe Long–Term Care, Inc.,* 2012-Ohio-2464, ¶ 12 (4th Dist.); *Grimes v. Grimes*, 2009-Ohio-3126, ¶ 16 (4th Dist.).

{¶15}  Summary judgment is appropriate only when the following have been established: (1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56(C); *DIRECTV, Inc. v. Levin*, 2010-Ohio-6279, ¶ 15. In ruling on a motion for summary judgment, the court must construe the record and all inferences therefrom in the nonmoving party's favor. Civ.R. 56(C). The party moving for summary judgment bears the initial burden to demonstrate that no genuine issues of material fact exist and that they are entitled to judgment in their favor as a matter of law. *Dresher v. Burt*, 75 Ohio St.3d 280, 292–293, (1996). To meet its burden, the moving party must specifically refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C); *Dresher* at 293. Moreover, the trial court may consider evidence not expressly mentioned in Civ.R. 56(C) if such evidence is incorporated by reference in a properly framed affidavit pursuant to Civ.R. 56(E). *Discover Bank v. Combs*, 2012-Ohio-3150, ¶ 17 (4th Dist.); *Wagner v. Young*, 1990 WL 119247, *4 (4th Dist. Aug. 8, 1990). Once that burden is met, the

nonmoving party then has a reciprocal burden to set forth specific facts to show that there is a genuine issue for trial. *Dresher* at 293; Civ.R. 56(E). *Am. Express Bank, FSB v. Olsman*, 2018-Ohio-481, ¶ 10-11 (4th Dist.); *DeepRock Disposal Sols., LLC v. Forte Productions, LLC,* 2021-Ohio-1436, ¶ 67-68 (4th Dist.).

**{¶16}** To identify the scope of evidence for our review, we address the School's objections to the evidence of remedial measures it took following the fall and the expert report Stealey submitted to support her opposition to summary judgment. First, Stealey did not respond to the School's objection at the trial court level and has not argued on appeal that the School's remedial measures or the expert report was proper evidence for the trial court's consideration.

**{¶17}** The School is correct on both objections. As to remedial measures, Evid.R. 407 states:

> When, after an injury or harm allegedly caused by an event, measures are taken which, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

"[T]he rule prohibits evidence of subsequent remedial measures where the same are introduced to prove negligence or culpable conduct." *Goodin v. Alexander Local School Dist.*, 1993 WL 98046, *6 (4th Dist. Mar. 26, 1993). Stealey did not argue that she offered the evidence of the School's remedial measures for another purpose. Thus, evidence of the School's subsequent remedial measures is not admissible and will not be considered.

**{¶18}** Similarly, the evidence of the expert report was not authenticated or introduced through an affidavit as required by Civ.R. 56(C). "Documents submitted in opposition to a motion for summary judgment that are not sworn, certified, or authenticated by affidavit have no evidentiary value and may not be considered by the court in deciding whether a genuine issue of material fact remains for trial." *Payne v. Rumpke*, 2023-Ohio-4760, ¶ 71 (4th Dist.). "Expert reports that have not been sworn, certified, or authenticated, in accordance with Civ.R. 56 have no evidentiary value and cannot be considered by the court." *Nuckols v. Consol. Rail Corp.*, 2024-Ohio-1070, ¶ 23 (6th Dist.). Additionally, the report lacked any credentials that would establish that the person who prepared it was an expert under Evid.R. 702(B). Thus, the expert report is not admissible and will not be considered.

### 2. Political Subdivision Immunity

**{¶19}** School districts are covered by Ohio's governmental immunity statutes, R.C. 2744.01, et seq., which provide immunity "in a civil action for injury, death, or loss to personal property allegedly caused by any act or omission of the political subdivision or an employee . . . in connection with a governmental or proprietary function." R.C. 2744.02(A)(1); R.C. 2744.01(F) (defining school district as a political subdivision); R.C. 2744.01(C)(2)(u) (defining a governmental function as the repair, maintenance, and operation of a school gymnasium). However, R.C. 2744.02(B) states, "a political subdivision is liable in damages in a civil action for injury, death, or loss to person or property allegedly caused by an act or omission of the political subdivision or any of its employees" under five circumstances listed

in R.C. 2744.02(B)(1)-(5). The only circumstance applicable to this case, and the

one asserted by Stealey, is R.C. 2744.02(B)(4):

> (4) Except as otherwise provided in section 3746.24 of the Revised Code [governing voluntary cleanup of contaminated property], political subdivisions are liable for injury, death, or loss to person or property that is caused by the negligence of their employees and that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function . . . .

{¶20} In its summary judgment motion, the School argued that Stealey was

not injured due to a "physical defect" within or on the grounds of the gymnasium.

First, it argued that the mats were removable objects, not attached to the structure,

and therefore not a physical defect within or on the grounds of the gymnasium.

Second, it argued that Stealey did not allege that the mats themselves were

defective, but rather that the negligence of a School employee in failing to secure

the mats was the cause of her injuries. Third, it argued that even if the exception

under subpart (B)(4) applied, immunity was reinstated because the use and

placement of the floor mats was under the judgment and discretion of the School

and its facilities director and Stealey has no evidence that the facilities director

exercised his discretion with malicious purpose, in bad faith, or in a wanton or

reckless manner as provided under R.C. 2744.02(A)(5):

> (5) The political subdivision is immune from liability if the injury, death, or loss to person or property resulted from the exercise of judgment or discretion in determining whether to acquire, or how to use, equipment, supplies, materials, personnel, facilities, and other resources unless the judgment or discretion was exercised with malicious purpose, in bad faith, or in a wanton or reckless manner.

The School cited the deposition testimony of its facilities manager, Trew, who testified that the School had used the mats in the same manner for years for many different events and there had been no prior incidents of people tripping.

{¶21} Alternatively, the School argued that even if they are not immune from liability, Stealey's negligence claim must fail as a matter of law because any danger associated with the mats was open and obvious and because she was a licensee to whom the School's duty is to refrain from wantonly or willfully causing injury. The School argued that there was no evidence it acted wantonly or willfully.

{¶22} Stealey opposed the motion, but the only admissible evidence she submitted was the deposition testimony of the School's facilities manager, Trew, and the School's video footage of Stealey's fall. Stealey argued that the School staff did not tape the edges of the mat down to the gymnasium floor, citing Trew's deposition testimony in which he testified that he did not instruct his staff to tape the mats down to the floor. Trew testified that he directs his staff to put the mats down and then to make sure that they are flattened out with the floor. He testified that the mats did not have any instructions to tape them down to the floor and did not come with any tape supplies or dispensers for that purpose.

{¶23} Stealey also argued that the video shows that "the mats had gaps in multiple locations posing tripping hazards." The video shows that the relevant section of the mats where Stealey was walking was smooth and lay flush to the floor. In the video showing the entire overview of the gymnasium floor, there appear to be a total of four floor mats covering the entire floor. The mats are laying smooth and there is no evidence of gaping or lifting anywhere in the main floor

area where Stealey and the other funeral attendees were walking and congregating. In the video depicting Stealey's fall, Stealey steps forward on an area of mat that is lying flush to the floor with no raised areas or gaps. The video shows that the place where she put her foot and tripped does not have any raised areas or gaps and that she tripped in an area where the mat laid flush to the floor. There appears to be a slightly raised area in a section farther to the right of Stealey's row, but this raised area is not in her walking path and is located under a chair. To the extent there were any raised areas or gaps anywhere in the mats, the video evidence shows that they were not in Stealey's pathway and did not cause Stealey's fall. Stealey does not claim to have tripped over a gapping or raised area.

{¶24} Stealey argued that the School's negligence is like the negligence described in *Hall v. Fort Frye Loc. School Dist. Bd. of Edn*., 111 Ohio App.3d 690 (4th Dist. 1996). In *Hall,* the school practice field contained an irrigation system with sprinkler heads. Over time, with weathering, the area around the sprinkler heads eroded and the sprinkler heads protruded above the ground surface, leaving a depressed area around them. A high school athlete stepped on one of the exposed sprinkler heads and injured his knee. Deposition testimony from various school employees conflicted. Some testified that efforts were made to keep the sprinkler heads covered with sand and dirt, but others testified that there was never any effort to cover them with anything in any manner. The court found that there was potential liability under R.C. 2744.02(B)(4) and that there was a genuine issue

of material fact as to whether the field maintenance was performed in a negligent

manner. *Id*. at 697-698.

{¶25} However, *Hall* was decided in 1996 and interpreted an earlier version

of R.C. 2744.02(B)(4) that did not contain the requirement that the plaintiff prove a

physical defect existed; it focused only on the negligence of the employees. That

version read:

> Political subdivisions are liable for injury, death, or loss to persons or property that is caused by the negligence of their employees and that occurs within or on the grounds of buildings that are used in connection with the performance of a governmental function.

Amendments effective April 9, 2003, narrowed the application of R.C.

2744.02(B)(4) to situations involving physical defects within or on the grounds of

the building. Cases since then have required plaintiffs to show that their injury

resulted from a physical defect, defined as "a perceivable imperfection that

diminishes the worth or utility of the object at issue":

> To establish the physical-defect exception, a plaintiff must show that the injury, death, or loss (1) resulted from employee negligence, (2) occurred within or on the grounds of buildings used in connection with a governmental function, and (3) resulted from a physical defect within or on the grounds of buildings used in connection with a governmental function. R.C. 2744.02(B)(4).

> We first address the "physical defect" element of the exception. "Physical defect" is not defined in R.C. Chapter 2744, but this court in *R.K. I* defined the term as " 'a perceivable imperfection that diminishes the worth or utility of the object at issue,' " a definition that had been applied by other courts. *R.K. I*, 2013-Ohio-4939, 1 N.E.3d 833, at ¶ 16, quoting *Hamrick v. Bryan City School Dist.*, 6th Dist. Williams No. WM-10-014, 2011-Ohio-2572, ¶ 25.

*Korengel v. Little Miami Golf Ctr.,* 2019-Ohio-3681, ¶ 29-30 (1st Dist.); *Leasure v.*

*Adena Local School Dist.,* 2012-Ohio-3071, ¶ 19 (4th Dist.) ("It would seem then

that a 'physical defect' is a perceivable imperfection that diminishes the worth or utility of the object at issue."). To show a physical defect the plaintiff must show that the instrumentality that caused the injury did not operate as intended due to a perceivable defect. *Leasure* at ¶ 23.

**{¶26}** In *Leasure,* we found that there was a genuine issue of material fact as to whether the bleachers, which did not contain an inherent defect, were nevertheless defective as set up. According to the evidence Leasure presented to oppose Adena's summary judgment motion, the bleachers were not set up in accordance with the manufacturer's specification, which required that they be fully extended so that they could lock in position and stabilize. Thus we found that the trial court did not err in denying Adena's motion for summary judgment on its political immunity claim.

**{¶27}** Stealey argued that the School's placement of the mats on the gymnasium floor without taping the mats' edges down was analogous to Adena's failure to fully extend the bleachers per the manufacturer's specification in *Leasure*, and constituted a physical defect in the mats. However, unlike the plaintiff in *Leasure*, who presented evidence that the manufacturer's specification required the full extension of the bleachers to properly stabilize them, Stealey presents *no evidence* that the manufacturer required that the mats be taped to be properly installed. She attempted to present evidence that a different mat manufacturer advised taping edges, but there was no evidence that this manufacturer was the same manufacturer who made the School's mats. Most importantly, this evidence

was inadmissible because she attempted to present it through the expert report, which was not properly authenticated.

{¶28} We find that the trial court did not err when it granted the School summary judgment on the issue of political immunity. Stealey failed to present any evidence of a physical defect in the set up and use of the mats on the gymnasium floor. Her attempt to get this evidence in through an expert witness report was improper, the deposition testimony of the School's facilities manager does not support it, and the video evidence contains no evidence that she tripped over a raised or gapping area in the mat.

{¶29} We find that the trial court properly found that the School was entitled to sovereign immunity under R.C. 2744.02 and overrule Stealey's sole assignment of error. We need not address Stealey's other arguments concerning whether any hazard associated with the mats was open and obvious and whether she was a social guest or a licensee. They are moot to our analysis and because the trial court found that the School was entitled to immunity, those additional findings were unnecessary to the trial court's resolution.

> Stated differently, dicta or dictum is an observation or statement in an opinion by the writing judge—* * *—which is unnecessary to resolution of the issues in the case * * *." *Black's Law Dictionary* 1102 (8th Ed.2004) ("a judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential.").

*Peters v. Tipton,* 2015-Ohio-3307, ¶ 6 (7th Dist.). Dicta is a comment or statement that does not state the holding of the trial court "and is not subject to reversal." *Davila v. Simpson*, 2018-Ohio-946, ¶ 43-44 (5th Dist.).

{¶30} Stealey's sole assignment of error is overruled.

## IV. CONCLUSION

**{¶31}** The trial court did not err in granting appellee's summary judgment motion on political immunity. Appellant's sole assignment of error is overruled, and the judgment of the trial court is affirmed.

**JUDGMENT AFFIRMED**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED. Costs to be paid by appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Common Pleas Court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Wilkin, J.: Concur in Judgment and Opinion.


For the Court,


_____
Michael D. Hess
Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**